IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

v.

MARJORIE RAE HUSE,

        Defendant.

Civil No. 18-4068

## COMPLAINT

COMES NOW the United States of America, by Stephen R. McAllister, United States Attorney for the District of Kansas, and Luke P. Sinclair, Assistant United States Attorney, and for its cause of action alleges:

1. This is a civil action for foreclosure of a Mortgage brought by the United States of America under the provisions of 28 U.S.C. § 1345.

2. Service may be made upon Defendant in the following manner:

    a. Defendant Marjorie Rae Huse may be served by delivering a copy of the Summons and Complaint to her at 718 NW 7th Street, Abilene, Kansas 67410, within the jurisdiction of this Court.

3. Defendant Marjorie Rae Huse executed and delivered to Plaintiff, acting through the Rural Housing Service, United States Department of Agriculture, a promissory note on September 19, 1994, in which she promised to pay Plaintiff the principal amount of $72,780.00, together with interest thereon at the rate of 8.0000 percent (8.0000%) per annum on the unpaid balance. As consideration for this note, Plaintiff made a Rural Housing loan to Defendant Marjorie

Rae Huse, pursuant to the provisions of Title V of the Housing Act of 1949 (42 U.S.C. § 1471, *et seq*.). A true and correct copy of the Promissory Note is attached as Exhibit A.

4. To secure the payment of the indebtedness, Defendant Marjorie Rae Huse did, on September 19, 1994, execute and deliver a purchase-money security interest in the form of a real estate mortgage upon certain real estate located in Dickinson County, Kansas, within the jurisdiction of this Court, described as follows:

> Lot One (1), Block One (1) Carri Addition to the City of Abilene, Dickinson County, Kansas.

This real estate mortgage was filed for record on September 19, 1994, in the office of the Register of Deeds of Dickinson County, Kansas, in Book 201 at Pages 581-584. A true and correct copy of the Mortgage is attached as Exhibit B.

5. Pursuant to the Housing Act of 1949, as amended, 42 U.S.C. § 1490a, and the implementing regulations, 7 C.F.R. § 3550.162, the Real Estate Mortgage also secures the recapture of interest credit or subsidy granted to Defendant Marjorie Rae Huse. The total amount of interest credit or subsidy subject to recapture is $67,974.54, such amount to be recovered *in rem* only, and only after recovery of the principal (including advances and other recoverable costs) and accrued interest through the date of any judgment. A true and correct coy of the Interest Credit Subsidy Repayment Agreement, dated September 19, 1994, is attached as Exhibit C.

6. Plaintiff is the owner and holder of the liability and security documents as set out above, attached as Exhibits A, B and C.

7. Defendant Marjorie Rae Huse failed to pay Plaintiff installments of principal and interest when due in violation of the provisions of the liability and security documents set out above. Plaintiff has elected to exercise its option to declare the entire unpaid principal balance plus

interest to be immediately due and payable and has made demand for these amounts. No payment has been received.

8. The amount due on the promissory note and mortgage is principal in the amount of $51,121.29 (including unpaid principal of $44,907.02, escrow replenish of $3,655.97, agency title report fees of $304.00, and escrow fees of $2,254.30) as of May 17, 2018; plus interest in the amount of $9,119.77 (including interest on principal of $8,391.64 and interest on advances of $728.13) accrued to May 17, 2018; plus interest accruing thereafter at the daily rate of $10.6886 (including daily interest on principal of $9.8426 and daily interest on advances of $0.8460) to the date of judgment; plus administrative costs pursuant to the promissory note and mortgage; plus filing fees in the amount of $400.00 allowed pursuant to 28 U.S.C. § 2412(a)(2); plus interest thereafter at the rate set forth in 28 U.S.C. § 1961; plus court costs and the costs of this action presently and in the future incurred.

9. There is also due and owing Plaintiff, *in rem*, the amount of $67,974.54 for interest credit or subsidy subject to recapture; plus interest after the date of judgment at the rate set forth in 28 U.S.C. § 1961; and foreclosure of Defendant's interests in the subject real estate.

10. No other action has been brought for recovery of these sums and no payment has been received.

11. Plaintiff has completed all loan servicing requirements of Title V of the Housing Act of 1949, 42 U.S.C. § 1471, *et seq*.

12. The indebtedness due Plaintiff by Defendant Marjorie Rae Huse is a first and prior lien on the property described above.

13. The interest of Defendant is junior and inferior to the interests of Plaintiff United States of America.

14. Less than one-third (1/3) of the original indebtedness secured by the mortgage was paid prior to default.

Plaintiff demands *in personam* judgment against Defendant Marjorie Rae Huse in the sum of principal in the amount of $51,121.29 (including unpaid principal of $44,907.02, escrow replenish of $3,655.97, agency title report fees of $304.00, and escrow fees of $2,254.30) as of May 17, 2018; plus interest in the amount of $9,119.77 (including interest on principal of $8,391.64 and interest on advances of $728.13) accrued to May 17, 2018; plus interest accruing thereafter at the daily rate of $10.6886 (including daily interest on principal of $9.8426 and daily interest on advances of $0.8460) to the date of judgment; plus administrative costs pursuant to the promissory note and mortgage; plus filing fees in the amount of $400.00 allowed pursuant to 28 U.S.C. § 2412(a)(2); plus interest thereafter at the rate set forth in 28 U.S.C. § 1961; plus court costs and the costs of this action presently and in the future incurred.

Plaintiff also demands foreclosure of Defendant's interests in the subject real estate.

Plaintiff further demands *in rem* judgment in the amount of $67,974.54 for interest credit or subsidy subject to recapture; plus interest after the date of judgment at the rate set forth in 28 U.S.C. § 1961.

Plaintiff further demands that its Mortgage be declared a first and prior lien on the real estate described herein and that such advances as Plaintiff may be authorized and required to pay for insurance premiums, real estate taxes, title fees, or other costs necessary to protect the security during the pendency of this proceeding be allowed as a first and prior lien on the security.

Plaintiff further demands that the United States of America be granted judgment foreclosing its mortgage on the subject real property and the interest of Defendant.

Plaintiff further demands that the judgment granted the United States of America in the Order and Judgment is the final judgment of this Court.

Plaintiff further demands that all legal right, title and interest which Defendant has in the real estate be foreclosed, and the real estate be sold at public sale to the highest bidder, in accordance with 28 U.S.C. §§ 2001-2003, inclusive, subject to a redemption period not to exceed three (3) months, pursuant to the provisions of K.S.A. § 60-2414(m), and that the sale be subject to any unpaid real estate taxes, special assessments and easements of record.

Plaintiff further demands that it may bid up to the full amount due it at the time of the sale without paying funds into the Court, which bid shall satisfy the requirement for a cash sale, and that the sale proceeds be applied in the following order:

(1) Filing fees in the amount of $400.00 allowed pursuant to 28 U.S.C. § 2412(a)(2);

(2) The costs of this action and the foreclosure sale;

(3) The interest accruing on Plaintiff's *in personam* judgment against Defendant Marjorie Rae Huse;

(4) Plaintiff's *in personam* judgment against Defendant Marjorie Rae Huse;

(5) The interest accruing on Plaintiff's *in rem* judgment for interest credit or subsidy subject to recapture;

(6) Plaintiff's *in rem* judgment for interest credit or subsidy subject to recapture; and,

(7) Any remaining balance should be held by the Clerk of the District Court to await the Court's further order.

Further, Plaintiff prays that, in the event the judgment is not wholly satisfied out of the proceeds of the sale, Plaintiff shall have judgment against Defendant Marjorie Rae Huse for any deficiency that exists after crediting the proceeds together with interest at the legal judgment rate.

Plaintiff further demands that all right, title, and interest in and to the real estate of Defendant, and of all persons claiming by, through or under her be decreed to be junior and inferior to Plaintiff's Mortgage and be absolutely barred and foreclosed.

Plaintiff further prays that, if the grantee named in the United States Marshal's Deed, or the grantee's assigns, are denied possession of the real property, a Writ of Assistance issue out of this Court to the United States Marshal for the District of Kansas, upon application of the grantee or assigns, ordering and directing the United States Marshal to place the grantee or assign, in full, complete, and peaceful possession of the real property.

Respectfully submitted,

STEPHEN R. MCALLISTER
United States Attorney
District of Kansas

s/ Luke P. Sinclair
LUKE P. SINCLAIR
Assistant United States Attorney
Ks. S.Ct. No. 23709
290 Federal Bldg.
444 SE Quincy Street
Topeka, Kansas 66683
PH: (785) 295-2850
FX: (785) 295-2853
Email: luke.sinclair@usdoj.gov
Attorneys for Plaintiff

REQUEST FOR PLACE OF TRIAL

The United States of America hereby requests that trial of the above-entitled matter be held in the City of Topeka, Kansas.

s/ Luke P. Sinclair
LUKE P. SINCLAIR
Assistant United States Attorney

| USDA-FmHA | | |
|---|---|---|
| Form FmHA 1940-16 | PROMISSORY NOTE | SEP 2 0 1994 |
| (Rev. 4-91) | | |

| TYPE OF LOAN | STATE |
|---|---|
| Rural Housing | KANSAS |
| | COUNTY |
| | DICKINSON |
| | CASE NO. |

Date __SEPTEMBER 19__, 19_94_.

FOR VALUE RECEIVED, the undersigned (whether one or more persons, herein called "Borrower") jointly and severally promise to pay to the order of the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, (herein called the "Government") at its office in

SALINA, KANSAS

THE PRINCIPAL SUM OF __SEVENTY-TWO THOUSAND SEVEN HUNDRED EIGHTY__

DOLLARS ($__72,780.00__), plus INTEREST on the UNPAID PRINCIPAL of

__EIGHT__ PERCENT (__8__ %) PER ANNUM.

Payment of the said Principal and Interest shall be as agreed between the Borrower and the Government using one of three alternatives as indicated below: (check one)

☐ I. Principal and Interest payments shall be deferred. The interest accrued to _____, 19____ shall be added to the Principal. Such new Principal and later accrued Interest shall be payable in _____ regular amortized installments on the dates indicated in the box below. Borrower authorizes the Government to enter the amount of such new Principal herein $_____ and the amount of such regular installments in the box below, when such amounts have been determined.

☐ II. Payment of Interest shall not be deferred. Installments of accrued Interest shall be payable on the _____ of each _____ beginning on _____, 19____, through _____, 19____.

Principal and later accrued Interest shall be paid in _____ installments as indicated in the box below;

☒ III. Payments shall not be deferred. Principal and Interest shall be paid in __396__ installments as indicated in the box below:

$__524.00__ on __OCTOBER 19__, 19_94_, and
$__524.00__ thereafter on the __19TH.__ of each __MONTH__
until the PRINCIPAL and INTEREST are fully paid except that the FINAL INSTALLMENT of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and PAYABLE __THIRTY-THREE__ (__33__) YEARS from the DATE of this NOTE. The consideration herefor shall support any agreement modifying the foregoing schedule of payments.

U.S. Government Printing Office: 1992 — 700-000    POSITION 2    FmHA 1940-16 (Rev. 4-91)

Exhibit A

If the total amount of the loan is not advanced at the time of loan closing, the loan shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval of the Government is mandatory provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown on the reverse hereof. Borrower authorizes the Government to enter the amount and date of such advance in the Record of Advances.

Payment of principal and interest shall be applied in accordance with FmHA accounting procedures in effect on the date of receipt of the payment. Borrower agrees to pay late charges in accordance with FmHA regulations in effect when a late charge is assessed.

Prepayments of scheduled installments, or any portion thereof, may be made at any time of the option of Borrower. Refunds and extra payments, as defined in the regulations (7CFR §1951.8) of the Farmers Home Administration according to the source of funds involved, shall, after payment of interest, be applied in accordance with FmHA regulations and accounting procedures in effect on the date of receipt of payments.

Borrower agrees that the Government at any time may assign this note. If the Government assigns the note and insures the payment thereof, and in such case, though the note is not held by the Government, Borrower shall continue to pay to the Government, as collection agent for the holder, all installments of principal and interest as scheduled herein.

If this note is held by an insured lender, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on either a calendar quarter basis or an annual installment due date basis. The effective date of any prepayment retained and remitted by the Government to the holder on an annual installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between the effective date of any such prepayment and the date of the Treasury check to the holder.

CREDIT ELSEWHERE CERTIFICATION: Borrower hereby certifies that he/she is unable to obtain sufficient credit elsewhere to finance his/her actual needs at reasonable rates and terms, taking into consideration prevailing private and cooperative rates and terms in or near his/her community for loans for similar purposes and periods of time, and that the loan evidenced hereby shall be used solely for purposes authorized by the Government.

LEASE OR SALE OF PROPERTY: If the property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced hereby is (1) leased or rented with an option to purchase, (2) leased or rented without option to purchase for a term exceeding 3 years, or (3) sold or title is otherwise conveyed, voluntarily or involuntarily, the Government may at its option declare the indebtedness evidenced hereby immediately due and payable.

REFINANCING AGREEMENT: Borrower hereby agrees to provide periodic financial information as requested by the Government. If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. This paragraph and the preceding paragraph shall not apply to any comaker signing this note pursuant to Section 502 of the Housing Act of 1949 to compensate for deficient repayment ability of other undersigned person(s).

CREDIT SALE TO NONPROGRAM BORROWER: The provisions of the paragraphs entitled "Credit Elsewhere Certification," and "Refinancing Agreement" do not apply if (1) this promissory note represents in whole or part payment for property purchased from the Government and (2) the loan represented by this promissory note was made to the borrower as an nonprogram borrower under Title V of the Housing Act of 1949, as amended, and regulations promulgated thereunder.

DEFAULT: Failure to pay when due any debt evidenced hereby or perform any covenant or agreement hereunder shall constitute default under this instrument and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such a debt; and default under any such other instrument shall constitute default hereunder. UPON ANY SUCH DEFAULT, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

SUBSIDY REPAYMENT AGREEMENT: Borrower agrees to the repayment (recapture) of subsidy granted in the form of interest credits. Subsidy will be repaid when the borrower's account is settled by sale of the security property, refinancing or payment in full and will be calculated in accordance with regulations in effect at the time of settlement. Recapture is based on property appreciation and can equal all, some or none but never exceed the amount of subsidy received.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Title V of the Housing Act of 1949 and for the type of loan as is indicated in the "TYPE OF LOAN" block above. This Note shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions hereof.

WARNING: Failure to fully disclose accurate and truthful financial information may result in the termination of program assistance currently being received, and the denial of future program assistance under USDA's Debarment regulations, 7 CFR Part 3017.

Presentment, protest, and notice are hereby waived.

*Marjorie R. Huse* (SEAL)
MARJORIE R. HUSE  (BORROWER)

_____ (SEAL)
(CO-BORROWER)

| RECORD OF ADVANCES ||||||
|---|---|---|---|---|---|
| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
| (1) $ 72,780.00 | 09-19-94 | (8) $ | | (15) $ | |
| (2) $ | | (9) $ | | (16) $ | |
| (3) $ | | (10) $ | | (17) $ | |
| (4) $ | | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| | | | TOTAL | $ 72,780.00 | |

T94149

USDA-FmHA
Form FmHA 1927-1 KS
(Rev. 12-93)

Position 5

Mort. Book __201__ Page __581__

FEB 7 1995

REAL ESTATE MORTGAGE FOR KANSAS

THIS MORTGAGE is made and entered into by __Marjorie R. Huse, a single person__

residing in __Dickinson__ County, Kansas, whose post office address is

__718 N.W. Seventh Street, Abilene__, Kansas __67410__,
herein called "Borrower," and the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, herein called the "Government," and

WHEREAS Borrower is indebted to the Government as evidenced by one or more promissory note(s) or assumption agreement(s) or any shared appreciation or recapture agreement, herein called "note," which has been executed by Borrower, is payable to the order of the Government, authorizes acceleration of the entire indebtedness at the option of the Government upon any default by Borrower, and is described as follows:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| 09-19-1994 | $ 72,780.00 | 8% | 09-19-2027 |

(The interest rate for limited resource farm ownership or limited resource operating loan(s) secured by this instrument may be increased as provided in the Farmers Home Administration regulations and the note.)

And the note evidences a loan to Borrower, and the Government, at any time, may assign the note and insure the payment thereof pursuant to the Consolidated Farm and Rural Development Act, or Title V of the Housing Act of 1949 or any other statutes administered by the Farmers Home Administration;

And it is the purpose and intent of this instrument that, among other things, at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the note, this instrument shall secure payment of the note; but when the note is held by an insured holder, this instrument shall not secure payment of the note or attach to the debt evidenced thereby, but as to the note and such debt shall constitute an indemnity mortgage to secure the Government against loss under its insurance contract by reason of any default by Borrower;

And this instrument also secures the recapture of any deferred principal and interest or of any interest credit and subsidy which may be granted to the Borrower by the Government pursuant to 42 U.S.C. § 1472 (g) or 1490a, respectively, or any amount due under any Shared Appreciation/Recapture Agreement entered into pursuant to 7 U.S.C. § 2001.

And this instrument also secures future advances made to anyone herein called borrower under a note or notes covering loans made or insured under the Consolidated Farm and Rural Development Act of Title V of the Housing Act of 1949 or any other statutes administered by the Farmers Home Administration, for the total principal indebtedness of the original future loans and advances subject to the same terms and conditions regarding the assignment of said notes as hereinabove provided, and all references in this instrument to the "note" shall be deemed to include future notes and advances.

NOW, THEREFORE, in consideration of the loan(s), and as security for future loans pursuant to the Consolidated Farm and Rural Development Act or Title V of the Housing Act of 1949 or any other statutes administered by the Farmers Home Administration, and (a) at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the payment of the note, to secure prompt payment of the note and any renewals and extensions thereof and any agreements contained therein, including any provision for the payment of an insurance or other charge, (b) at all times when the note is held by an insured holder, to secure performance of Borrower's agreement herein to indemnify and save harmless the Government against loss under its insurance contract by reason of any default by Borrower, and (c) in any event and at all times to secure the prompt payment of all advances and expenditures made by the Government, with interest, as hereinafter described, and the performance of every covenant and agreement of Borrower contained herein or in any supplementary agreement, Borrower does hereby mortgage, assign, and warrant to the Government the following property situated in the State of Kansas, County(ies) of Dickinson.

Lot One (1), Block One (1) Carri Addition to the City of Abilene, Dickinson County, Kansas.

FmHA 1927-1 KS (Rev. 12-93)

Exhibit B

Mort. Book 201 Page 582

together with all rights (including the rights to mining products, gravel, oil, gas, coal or other minerals), interests, easements, hereditaments and appurtenances thereunto belonging, the rents, issues, and profits thereof and revenues and income therefrom, all improvements and personal property now or later attached thereto or reasonably necessary to the use thereof, including, but not limited to, ranges, refrigerators, clothes washers, clothes dryers, or carpeting purchased or financed in whole or in part with loan funds, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, conveyance, or condemnation of any part thereof or interest therein-all of which are herein called "the property";

BORROWER for Borrower's self, Borrower's heirs, executors, administrators, successors and assigns WARRANTS THE TITLE to the property to the Government against all lawful claims and demands whatsoever except any liens, encumbrances, easements, reservations, or conveyances specified hereinabove, and COVENANTS AND AGREES as follows:

(1) To pay promptly when due any indebtedness to the Government hereby secured and to indemnify and save harmless the Government against any loss under its insurance of payment of the note by reason of any default by Borrower. At all times when the note is held by an insured holder, Borrower shall continue to make payments on the note to the Government, as collection agent for the holder.

(2) To pay to the Government such fees and other charges as may now or hereafter be required by regulations of the Farmers Home Administration.

(3) If required by the Government, to make additional monthly payments of 1/12 of the estimated annual taxes, assessments, insurance premiums and other charges upon the mortgaged premises.

(4) Whether or not the note is insured by the Government, the Government may at any time pay any other amounts including advances for payment of prior and/or junior liens, required herein to be paid by Borrower and not paid by Borrower when due, as well as any costs and expenses for the preservation, protection, or enforcement of this lien, as advances for the account of Borrower. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

(5) All advances by the Government, including advances for payment of prior and/or junior liens, in addition to any advances required by the terms of the note, as described by this instrument, with interest, shall be immediately due and payable by Borrower to the Government without demand at the place designated in the latest note and shall be secured hereby. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any indebtedness to the Government secured hereby, in any order the Government determines.

(6) To use the loan evidenced by the note solely for purposes authorized by the Government.

(7) To pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property, including all charges and assessments in connection with water, water rights, and water stock pertaining to or reasonably necessary to the use of the real property described above, and promptly deliver to the Government without demand receipts evidencing such payments.

(8) To keep the property insured as required by and under insurance policies approved by the Government and, at its request, to deliver such policies to the Government.

(9) To maintain improvements in good repair and make repairs required by the Government; operate the property in a good and husbandmanlike manner; comply with such farm conservation practices and farm and home management plans as the Government from time to time may prescribe; and not to abandon the property, or cause or permit waste, lessening or impairment of the security covered hereby, or, without the written consent of the Government, cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals except as may be necessary for ordinary domestic purposes.



(10) To comply with all laws, ordinances, and regulations affecting the property.

(11) To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or the compliance with the provisions hereof and of the note and any supplementary agreement (whether before or after default), including but not limited to costs of evidence of title to and survey of the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

(12) Except as otherwise provided by the Farmers Home Administration regulations, neither the property nor any portion thereof or interest therein shall be leased, assigned, sold, transferred, or encumbered voluntarily or otherwise, without the written consent of the Government. The Government shall have the sole and exclusive rights as mortgagee hereunder, including but not limited to the power to grant consents, partial releases, subordinations, and satisfaction, and no insured holder shall have any right, title or interest in or to the lien or any benefits hereof.

(13) At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenants and agreements contained herein or in any supplementary agreement are being performed.

(14) The Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on, the debt evidenced by the note or any indebtedness to the Government secured by this instrument, (d) release any party who is liable under the note or for the debt from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all this can and will be done without affecting the lien or the priority of this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument unless the Government says otherwise in writing. HOWEVER, any forbearance by the Government--whether once or often--in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

(15) If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will upon the Government's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

(16) Default hereunder shall constitute default under any other real estate, or under any personal property, or other security instrument held or insured by the Government and executed or assumed by Borrower, and default under any such other security instrument shall constitute default hereunder.

(17) SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent, or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future laws.

(18) The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other indebtedness of Borrower owing to or insured by the Government, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to or insured by the Government, in the order prescribed above.

(19) Borrower agrees that the Government will not be bound by any present or future State laws, (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action must be brought, (c) prescribing any other limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State laws. Borrower hereby relinquishes, waives, and conveys all rights inchoate or consummate, of descent, dower and curtesy.

(20) If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for its sale or rental, or will otherwise make unavailable or deny said property, to anyone because of race, color, religion, sex, national origin, handicap, familial status or age, and (b) Borrower recognizes as illegal and hereby disclaims and will not comply with or attempt to enforce any restrictive covenants on said property relating to race, color, religion, sex, national origin, handicap, familial status or age.

(21) Borrower further agrees that the loan(s) secured by this instrument will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 CFR Part 1940, Subpart G, Exhibit M.

Mort. Book __201__ Page __584__

(22) This instrument shall be subject to the present regulations of the Farmers Home Administration, and to its future regulations not inconsistent with the express provisions hereof.

(23) Notices given hereunder shall be sent by certified mail, unless otherwise required by law, and addressed, unless and until some other address is designated in a notice so given, in the case of the Government to Farmers Home Administration at Topeka, Kansas 66683, and in the case of Borrower at the address shown in the Farmers Home Administration Finance Office records (which normally will be the same as the post office address shown above).

(24) If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

IN WITNESS WHEREOF, Borrower has hereunto set Borrower's hand(s) and seal(s) this __19th__ day of __September__, 19__94__.

_Marjorie R. Huse_ (SEAL)
Marjorie R. Huse

_____ (SEAL)

STATE OF KANSAS, ss. 003411
Dickinson County Filed for record this

SEP 1 9 1994

at __1:35__ o'clock __P__ M. and recorded in book __201__ page __581__
_Linda Oneal_
Register of Deeds
Deputy
"no tax"

MICROFILM 9/22/94 THIS _____
REGISTER OF DEEDS

STATE OF KANSAS } ss:
COUNTY OF __DICKINSON__ }

ACKNOWLEDGMENT

On this __19th__ day of __September__ A.D., 19 __94__, before me _____ __a Notary Public__ _____ personally appeared
*(Insert title of officer taking acknowledgment)*

__Marjorie R. Huse, a single person__ xxx

, to me known to be the identical person(s) named in and who executed the foregoing instrument and acknowledged that __she__ executed the same as __her__ voluntary act and deed.

_David J. Robson_
David J. Robson     Notary Public.

(SEAL)
My appointment expires __July 17, 1996__


SEP 20 1994

FmHA Instruction 1951-I
Exhibit A

UNITED STATES DEPARTMENT OF AGRICULTURE
FARMERS HOME ADMINISTRATION

Subsidy Repayment Agreement

Date of Note 09-19-94    Amount of Note $72780.00    Date of mortgage 09-19-1994

Date of Note _____    Amount of Note _____    Date of mortgage _____

Type of assistance:                    1. Interest credit [x]
                                       2. Homeownership Assistance
                                          Program [ ]

Address of Property: 718 N.W. 7th. St.

                     Abilene, Kansas 67410

        BORROWER:  Marjorie R. Huse

        CO-BORROWER:

1    This agreement entered into pursuant to 7 CFR 1951-I, between the United
States of America, acting through the Farmers Home Administration (FmHA)
(herein called "the Government") pursuant to section 521 of Title V of the
Housing Act of 1949 and the borrower(s) whose name(s) and address(es) appears
above (herein sometimes referred to as "borrower"), supplements the note(s)
from borrower to the Government as described above, and any promissory
note(s) for loans made to borrower in the future by the Government.
Such future notes, when executed, will be listed below the signature line
of this Subsidy Repayment Agreement.

2    I (we) agree to the conditions set forth in this agreement for the
repayment of the subsidy granted me (us) in the form of interest credits
or Homeownership Assistance Program (HOAP) subsidy (hereinafter called
"subsidy").

3    I (we) agree that the real property described in the mortgage(s)
listed above is pledged as security for repayment of the subsidy received
or to be received. I (we) agree that the subsidy is due and payable upon
the transfer of title or non-occupancy of the property by me (us). I
(we) understand that the real estate securing the loan(s) is the only
security for the subsidy received. I (we) further understand that I (we)
will not be required to repay any of the subsidy from other than the value
(as determined by the Government) of the real estate, mortgaged by myself
(ourselves) in order to obtain a Section 502 Rural Housing (RH) loan.

(9-27-79)  SPECIAL PN

Exhibit C

FmHA Instruction 1951-I
Exhibit A
Page 2

4    I (we) understand that so long as I (we) continue to own the property and occupy the dwelling as my (our) residence, I (we) may repay the principal and interest owed on the loan and defer repaying the subsidy amount until title to the property is conveyed or the dwelling is no longer occupied by me (us). If such a request is made, the amount of subsidy to be repaid will be determined when the principal and interest balance is paid. The mortgage securing the FmHA RH loan(s) will not be released of record until the total amount owed the Government has been repaid.

5    I (we) agree that Paragraph 6 of this agreement is null and void should the property described in the mortgage(s) be voluntarily conveyed to the Government or liquidated by foreclosure.

6    When the debt is satisfied by other than voluntary conveyance of the property to the Government or by foreclosure, I (we) agree that sale proceeds will be divided between the Government and me (us) in the following order:

    (a) Unpaid balance of loans secured by a prior mortgage as well as real estate taxes and assessments levied against the property which are due will be paid.

    (b) Unpaid principal and interest owed on FmHA RH loans for the property and advances made by FmHA which were not subsidy and are still due and payable will be paid to the Government.

    (c) I (we) will receive from the sale proceeds actual expenses incurred by me (us) necessary to sell the property. These may include sales commissions or advertising cost, appraisal fees, legal and related costs such as deed preparation and transfer taxes. Expenses incurred by me (us) in preparing the property for sale are not allowed unless authorized by the Government prior to incurring such expenses. Such expenses will be authorized only when FmHA determines such expenses are necessary to sell the property, or will likely result in a return greater than the expense being incurred.

    (d) I (we) will receive the amount of principal paid off on the loan calculated at the promissory note interest rate.

    (e) Any principal reduction attributed to subsidized interest calculations will be paid to the Government.

    (f) I (we) will receive my original equity which is the difference between the market value of the security, as determined by the FmHA appraisal at the time the first loan subject to recapture of subsidy was made, and the amount of the FmHA loan(s) and any prior lien. This amount is ___$720.00___ and represents ___.97959___ percent of the market value of the security. (The

FmHA Instruction 1951-I
Exhibit A
Page 3

      percent is determined by dividing my (our) original equity by
      the market value of the security when the loan was closed.) The
      dollar amounts and percent will be entered at the time this agreement
      is signed by me (us) and will be part of this agreement.

  (g) The remaining balance, after the payments described in (a) thru (f)
      above have been paid is called <u>value appreciation</u>. The amount of
      value appreciation to be paid to the Government, in repayment or
      the subsidy granted, is the lesser of (1) the full amount of the subsidy or
      (2) an amount determined by multiplying the value appreciation by the
      appropriate factor in the following table.

Average interest rate paid by me (us)

| No. of Months the Loan was Outstanding | 1% or Less | 1.1 to 2% | 2.1 to 3% | 3.1 to 4% | 4.1 to 5% | 5.1 to 6% | 6.1 to 7% | 7.1 or greater |
|---|---|---|---|---|---|---|---|---|
| 0 to 59 | .78 | .68 | .60 | .51 | .44 | .32 | .22 | .11 |
| 60 to 119 | .75 | .66 | .58 | .49 | .42 | .31 | .21 | .11 |
| 120 to 179 | .73 | .63 | .56 | .48 | .40 | .30 | .20 | .10 |
| 180 to 239 | .65 | .56 | .49 | .42 | .36 | .26 | .18 | .09 |
| 40 to 299 | .59 | .51 | .46 | .38 | .33 | .24 | .17 | .09 |
| 300 to 359 | .53 | .45 | .40 | .34 | .29 | .21 | .14 | .09 |
| 360 to 396 | .47 | .40 | .36 | .31 | .26 | .19 | .13 | .09 |

  (h) I (we) will receive the amount of value appreciation less the
      amount paid the Government as determined in (g) above. I (we) will
      also receive an additional amount in proportion to my original equity
      by reducing the amount of value appreciation due to the Government by
      the percent of my (our) original equity as shown in (f) above.

  (i) If I (we) am the recipient of HOAP, the amount of value appreciation
      to be recaptured will be calculated as if I (we) had paid 1 percent
      interest on the loan, unless the average interest rate paid by me (us)
      was greater than 1 percent. In such cases it will be determined based
      on the average interest rate paid by me (us).

  (j) If this agreement is for a subsequent loan(s) only, the amount
      of repayment determined in (g) above will be reduced by the following
      percent:____NA___. This percent will be determined by dividing the
      amount of the loan(s) subject to recapture by the total outstanding
      RH debt. This percentage will be entered at the time I (we) sign this
      agreement.

  (k) If this agreement is for more than one loan that is subject to
      recapture, the subsidy repayment computations will be based on the total
      subsidy granted on all loans.

(9-27-79) SPECIAL PN

FmHA Instruction 1951-I
Exhibit A
Page 4

7    When a FmHA RH loan is repaid by other than foreclosure, voluntary conveyance, or sale of property, the amount of subsidy to be repaid the Government will be determined in the same manner as described in paragraph 6 of this Exhibit but based on the appraised value determined by FmHA instead of sales price. In such cases, the subsidy due the Government will remain a lien on the property until paid. It must be paid upon non occupancy, sale, or transfer of title to the property.

8    I (we) have read and agree to the provisions of this agreement.

_Marjorie R. Huse_ Borrower
Marjorie R. Huse

_____ Co-Borrower

September 19, 1994
Date signed

Accepted and Agreed to
By _William L. Mahanay_ (FmHA Official)
    William L. Mahanay
    County Supervisor    (Title)

September 19, 1994
Date

oOo